IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-14178-CIV-MOORE/LYNCH

JOHN ZUCCARINI,

    Plaintiff,

v.

NAMEJET, LLC, NETWORK
SOLUTIONS, LLC, VERISIGN, INC.,
and ENOM, INC.

    Defendants.

_____/

## ORDER TRANSFERRING ACTION TO THE EASTERN DISTRICT OF VIRGINIA

THIS CAUSE came before the Court upon Defendant eNom, Inc.'s ("eNom") Motion to Dismiss for Improper Venue (ECF No. 14); Defendant NameJet, LLC's ("NameJet") Motion to Dismiss for Failure to State a Claim (ECF No. 28); Defendant Network Solutions, LLC's ("Network Solutions") Motion to Dismiss for Improper Venue & Failure to State a Claim (ECF No. 22); Defendant Verisign, Inc.'s ("Verisign") Motion to Dismiss for Failure to State a Claim (ECF No. 33), Motion Requesting Judicial Notice (ECF No. 34), and Motion to Stay (ECF No. 41), and Plaintiff John Zuccarini's ("Zuccarini") Motion to Strike Defendant eNom's Answers (ECF No. 32). All of these motions have been fully briefed.

UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.   **BACKGROUND**

Plaintiff Zuccarini alleges that Defendants breached various contracts by improperly transferring 90 to 93 website domain names[1], which Zuccarini owned, to a non-party. Defendants move to dismiss on the basis of improper jurisdiction and failure to state a claim.

The following background on internet systems may be helpful in understanding the disputes in the current case:

> Every computer connected to the Internet has a unique Internet Protocol ("IP") address. IP addresses are long strings of numbers, such as 64.233.161.147. The Internet [domain name system] provides an alphanumeric shorthand for IP addresses. The hierarchy of each domain name is divided by periods. Thus, reading a domain name from right to left, the portion of the domain name to the right of the first period is the top-level domain ("TLD"). TLDs include .com, .gov, .net., and .biz. Each TLD is divided into second-level domains identified by the designation to the left of the first period, such as "example" in "example.com" or "example.net." Each domain name is unique and thus can only be registered to one entity.
>
> A domain name is created when it is registered with the appropriate registry operator. A registry operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. The domain name servers direct Internet queries to the related web resources. A registrant can register a domain name only through companies that serve as registrars for second level domain names. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants . . . .
>
> The majority of domain name registrations for commercial purposes utilize the .com TLD.
>
> Office Depot Inc. v. Zuccarini, 596 F.3d 696, 698-99 (9th Cir. 2010) (citation omitted).

---

[1] There are 93 domain names at issue. Zuccarini alleges that Network Solutions transferred "90 subject domain names." Compl. ¶ 13. He then states that Network Solutions and eNom transferred 93 domain names. Compl. ¶ 17. Zuccarini continues that "fourteen (14) of the ninety (90) domain names transferred by" Network Solutions were then sent to an auction by NameJet. Compl. ¶ 18. This Court construes from the Complaint that Zuccarini claims that Network Solutions transferred 90 domain names to a third-party and eNom and/or Network Solutions transferred an additional three domain names to a third-party.

> . . . [T]here are three primary actors in the domain name system. First, companies called "registries" operate a database (or "registry") for all domain names within the scope of their authority. Second, companies called "registrars" register domain names with registries on behalf of those who own the names. Registrars maintain an ownership record for each domain name they have registered with a registry. Action by a registrar is needed to transfer ownership of a domain name from one registrant to another. Third, individuals and companies called "registrants" own the domain names. Registrants interact with the registrars, who in turn interact with the registries.

Office Depot Inc., 596 F.3d at 699.

The factual background of this case was also discussed in the Office Depot, Inc. opinion:

> In December 2000, Office Depot obtained a judgment against Zuccarini under the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d), arising out of Zuccarini's registration of the domain name "offic-depot.com." Office Depot was unable to collect on the judgment and eventually assigned the judgment to [DS Holdings, LLC] DSH.
>
> DSH sought to levy upon some of the other domain names owned by Zuccarini. DSH registered the judgment in the district court for the Northern District of California. DSH then obtained a preservation order from the district court and engaged in discovery. It learned that Zuccarini owned more than 248 domain names registered with VeriSign, of which more than 190 were ".com" domain names. DSH targeted the ".com" domain names in its levy.

Id. at 698.

The district court for the Northern District of California granted DSH's motion for a receiver to obtain and sell Zuccarini's domain names "to satisfy the judgment" against him. Id. at 699. The district court ordered Michael Blacksburg ("Blacksburg"), a non-party to this claim, to be the post-judgment receiver of Zuccarini's domain names. Def.'s Net. Sol. Mot. Dismiss Ex. A ¶ 5 (ECF No. 22-1). In addition, the district court's order stated that "registrars shall transfer control of the Zuccarini domain names to the receiver." Def.'s Net. Sol. Mot. Dismiss Ex. A ¶ 6.

3

Pursuant to the order, Network Solutions and eNom transferred 90 to 93 of Zuccarini's domain names to Blacksburg. Compl. ¶¶ 13, 17 (ECF No. 1). Blacksburg was the registrant of the domain names and had to renew their registrations to maintain control of them. Blacksburg permitted 14 domain names' registrations to expire. After they expired, Network Solutions placed the 14 domain names on NameJet's auction forum. Compl. ¶ 18. The domain names were sold to other registrants, non-parties to this case. Compl. ¶ 18. Zuccarini claims that the domain names were purchased for $80,000, and that he owns the remaining 76 domain names that are currently registered to Blacksburg. Compl. ¶¶ 21, 22. Zuccarini filed a Complaint on July 7, 2010 alleging four counts, including: (1) breach of contract, (2) conversion, (3) civil conspiracy, and (4) declaratory and injunctive relief.

## II.   STANDARD OF REVIEW

A motion to dismiss for improper venue should be brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998) (stating that in regards to improper venue "we consider Rule 12(b)(3) a more appropriate vehicle through which to assert the motion to dismiss"). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). However, "[a] court may also 'consider matters outside the pleadings if presented in proper form by the parties.'" Walker, M.D. v. Hallmark Bank & Trust, LTD., 707 F. Supp. 2d 1322, 1325 (S.D. Fla. 2010) (citing MGC Comm., Inc. v. Bellsouth Telecomm., Inc., 146 F. Supp. 2d 1344 (S.D. Fla. 2001)). "Pro se pleadings are held to a less stringent standard

than pleadings drafted by attorneys and will, therefore, be liberally construed." Trawinski v. United Tech., 313 F.3d 1295, 1297 (11th Cir. 2002) (citation omitted).

There is a presumption that a forum selection clause is "valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances.'" Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-95 (1991)). The burden rests with the party attempting not to comply with a forum selection clause. See Walker, M.D., 707 F. Supp. 2d at 1325 (finding that "the party seeking to defeat the agreed upon venue 'bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute'") (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)). The burden of proving a forum selection clause's "unreasonableness is a heavy one." Walker, M.D., 707 F. Supp. 2d at 1322.

### III. ANALYSIS

#### A. Whether the Forum Selection Clauses are Valid and Enforceable

Defendants eNom and Network Solutions seek to dismiss the Complaint for improper venue pursuant to Rule 12(b)(3) because Zuccarini entered into agreements that have forum selection clauses. Fed. R. Civ. P. 12(b)(3). Alternatively, eNom and Network Solutions request to transfer this case under 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Washington and the Eastern District of Virginia respectively.[2] This Court must first determine whether the forum selection clauses are valid and enforceable.

---

[2] 28 U.S.C. § 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A forum selection clause will only be unenforceable for unreasonableness if: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1296 (11th Cir. 1998) (citations omitted). "In determining whether there was fraud or overreaching . . . we look to whether the clause was reasonably communicated to the consumer." Krenkel, 579 F.3d at 1281. In assessing reasonable communication, courts consider the "physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms." Id.

1. The Forum Selection Clause Between Network Solutions and Zuccarini

Zuccarini registered 90 domain names with Network Solutions. Upon registering the website domain names, Zuccarini entered into Service Agreements with Network Solutions. The terms of the Service Agreements varied depending on the date of each registration. Despite the language variances in the Service Agreements, the choice of jurisdiction and venue remained the same.

Network Solutions' Service Agreements contained the following provision:

GOVERNING LAW. You and Network Solutions agree that this Agreement and any disputes hereunder shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America, excluding its conflict of laws rules. You and we each agree to submit to exclusive subject matter jurisdiction, personal jurisdiction and venue in the United States District Court for the Eastern District of Virginia, Alexandria Division for any disputes between you and Network Solutions under, arising out of, or related in any way to this Agreement (whether or not such disputes also involve other parties in addition to you and Network Solutions). If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, for any such disputes, you and we agree that exclusive jurisdiction and venue shall be in the courts of Fairfax County, Fairfax, Virginia.

Def.'s Net. Sol. Mot. Dismiss Attach. Exhibits.

To register a domain name with Network Solutions, a registrant had to check a box that appeared on Network Solutions' website. The box confirmed that the registrant read the Service Agreement and agreed to its terms. As part of the terms in the Service Agreement, a registrant contracted to the forum selection clause. Without checking this box, a registrant could not receive services from Network Solutions.

Here, Zuccarini registered at least 90 domain names with Network Solutions. Compl. ¶ 13. He does not deny entering into these agreements and acknowledges that he agreed to contracts with Network Solutions. See Compl. ¶ 11 (alleging "[o]ver the years, Plaintiff has obtained and registered domain names, abided by and adhered to agreements/contracts between himself and named defendants"). He had extensive business experience as a registrant and participated in similar business transactions prior to this lawsuit. See Office Depot Inc., 596 F.3d at 698 (stating that "Zuccarini owned more than 248 domain names registered . . . of which more than 190 were '.com' domain names").

Zuccarini does not challenge the terms of the forum selection clause. Rather, he is challenging the clause based upon (1) fraud and (2) the inconvenience caused if this case is transferred. First, Zuccarini asserts several claims that Network Solutions "perpetrated a fraud upon the Court." Pl.'s Resp. Net. Sol. Mot. Dismiss 3-6 (ECF No. 36). In doing so, he attempts to re-litigate a prior default judgment against him that was upheld in the Ninth Circuit Court of Appeals. Office Depot Inc., 596 F.3d at 698. His claims of fraud pertain solely to Network Solutions' actions after he entered into the Service Agreements. Allegations that Network Solutions engaged in fraudulent behavior with his domain names after he agreed to the forum

selection clause will not invalidate the contract. See Hallmark, 707 F. Supp. 2d at 1326 (finding that "a mere allegation of fraudulent activities on the part of Defendants pertaining to subsequent misappropriation of Plaintiff's investment is not sufficient to invalidate the forum selection clause").

Reading Zuccarini's pleadings liberally, the Court construes that transferring this case would inconvenience him, depriving him of his day in court. However, this factor alone will not prevent enforcement. Zuccarini contends that he receives Social Security as his only income and does not have the "necessary assets to have multi-state litigation."[3] Pl.'s Resp. Net. Sol. Mot. Dismiss 15-16. Taking Zuccarini's financial hardship statements as true, the inconvenience caused does not warrant invalidating the forum selection clause. See P&S Business Machines, Inc. v. Cannon, USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) (holding that plaintiff's financial problems and inconvenience should not prevent courts from transferring cases pursuant to a forum selection clause); In re Rico Corp., 870 F.2d at 572-74 (finding that the district court abused its discretion by not transferring the case because of mere inconvenience to a plaintiff caused by the venue); Food Marketing Consultants, Inc. v. Sesame Workshop, No. 09-61776-CIV, 2010 WL 1571206, at *6 (S.D. Fla. Mar. 26, 2010) (denying inconvenience argument where minimal evidence was presented by moving party that they could not litigate the matter in another venue provided in the forum selection clause).

The forum selection clause is valid and enforceable. The language was reasonably communicated, providing mandatory and exclusive jurisdiction in the Eastern District of Virginia. See Krenkel, 579 F.3d at 1281 (holding that an unambiguous agreement with "plain"

---

[3] The Court notes that Zuccarini has litigated matters in other federal jurisdictions previously.

language properly informed parties of a forum selection clause). The clause's physical characteristics gave Zuccarini the ability to inform himself of the contract. He clearly had ample opportunity to reject or accept the terms, since in this case, he had at least 90 separate instances to decline the conditions of Network Solutions' Service Agreement. Id. (denying argument that plaintiff could not reject the terms of the forum selection clause). Moreover, all of Zuccarini's claims are encompassed in the forum selection clause.

Accordingly, Zuccarini failed to meet his burden, and the forum selection clause is valid and enforceable.

>    2.   The Forum Selection Clause Between eNom and Zuccarini

Zuccarini argues that eNom and/or Network Solutions transferred 93 domain names that he owned to a third-party. Compl. ¶ 17. Zuccarini entered into two Registration Agreements and a Reseller Agreement ("Agreements") with eNom. Def.'s eNom Mot. Dismiss (ECF No. 14-1). eNom asks this Court to enforce the forum selection clause provided in the Agreements.

The forum selection clause in the Registration Agreement stated:

> GOVERNING LAW AND JURISDICTION FOR DISPUTES: Except as otherwise set forth in the UDRP or any similiar ccTLD [country code top-level domain] policy with respect to any dispute over a domain name registration this Agreement, your rights and obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Washington, as if the Agreement was a contract wholly entered into and wholly performed within the State of Washington. You agree that any action brought by you to enforce this Agreement or any matter brought by you and which is against or involves us and which relates to your use of the Services shall be brought exclusively in the United States District Court for the Western District of Washington, or if there is no jurisdiction in such court, then in a state court in King County, Washington State. You consent to the personal and subject matter jurisdiction of any state or Federal court in King County, Washington state in relation to any dispute between you and us under this Agreement . . . .

eNom Registration Agreement Ex. B (ECF No. 14-1).

> The forum selection clause in the Reseller Agreement stated:
>
> Governing Law and Venue for Disputes. . . . Any action to enforce this RSA or any matter relating to your use of the Backend Service Provider's or the Backend Service Provider's subsidiaries' services shall be brought exclusively in the United States District Court for the Western District of Washington . . . .
>
> eNom Reseller Agreement Ex. D (ECF No. 14-1).

Zuccarini acknowledges that he entered into Agreements with eNom and does not dispute that he contracted to these terms. See Pl.'s Resp. Def. eNom Mot. Dismiss 10 (ECF No. 31). He argues that despite the Agreements, eNom committed fraud and that transferring this case would inconvenience him, depriving him of his day in court.

Zuccarini's accusations of fraud against eNom are similar to his claims against Network Solutions. In both, he fails to assert any evidence of fraud as to the forum selection clauses and does not argue that fraud induced him into agreeing to its terms. Rather, Zuccarini makes allegations of fraud that are completely unrelated to the clauses at issue. As such, he did not provide the requisite support to overcome his burden. See Hallmark, 707 F. Supp. 2d at 1281 (rejecting general claims of fraud as reason to not transfer venue); Food Marketing Consultants, Inc. v. Sesame Workshop, No. 09-61776-CIV, 2010 WL 1571206, at *6 (S.D. Fla. Mar. 26, 2010) (providing that "for a party to escape a forum selection clause on the grounds of fraud, it must show that the inclusion of the clause in the contract resulted from fraud or coercion"). Moreover, for the reasons stated previously, Zuccarini's arguments that transferring this case would deprive him of his day in court are unpersuasive.

Furthermore, the forum selection clauses in the Agreements satisfy the reasonable communication test. See Krenkel, 579 F.3d at 1281 (analyzing whether "the clause was reasonably communicated to the consumer" and upholding forum selection clause that had

"plain," unambiguous language, with opportunity for plaintiff to reject the contract). In order to register a domain name with eNom, a registrar would begin building an account by starting an online application. To do this, eNom's registration required the user to provide personal information and accept the terms of the registration agreement. There was an accept and decline option. The website had a terms and conditions link that was bolded, which permitted registrars to view the agreement. At that point, Zuccarini had the ability to inform himself of the terms and reject the contract. The actual terms of the clause were mandatory and exclusive, requiring claims to be litigated in the Western District of Washington. In addition, all of Zuccarini's claims fall under the terms of the forum selection clauses.

Accordingly, Zuccarini failed to meet his burden, and the forum selection clause is valid and enforceable.

B. The Court will Transfer the Case For Improper Venue

The facts warrant a transfer of this case to another federal district court pursuant to 28 U.S.C. § 1404(a). The Court declines to dismiss this case because the forum selection clauses allow for transfer of the lawsuit to another federal district court. The Eleventh Circuit and its district courts have dismissed cases for improper venue because of enforceable forum selection clauses where the parties contract provided for mandatory international, state, or city venue, but not when the clause provided an alternative federal district court. Compare P & S Bus. Machines, Inc. v. Canon USA Inc., 331 F.3d 804, 807 (11th Cir. 2003) (stating that "[c]onsideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C.§ 1404(a)"); In re Ricoh, 870 F.2d at 573-74 (analyzing transfer for improper venue pursuant to 28 U.S.C. § 1404(a), not Rule 12(b)(3));

Food Marketing Consultants, Inc. v. Sesame Workshop, No. 09-61776-CIV, 2010 WL 1571206, at *4 (S.D. Fla. Mar. 26, 2010) (applying motion to transfer venue instead of motion to dismiss where a forum selection clause was valid and enforceable and determining "where a forum-selection clause exists, the proper method for seeking to enforce that provision is a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)"); Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am., No. CV 108-153, 2010 WL 317472, at *2 (S.D. Ga. Jan 25, 2010) (finding proper analysis of improper venue due to a forum selection clause was under 28 U.S.C. § 1404(a) and stating that "transferring this case, not dismissing it, is in line with Eleventh Circuit law"); Gen. Pump & Well, Inc. v. Laibe Supply Corp., No. CV 607-30, 2007 WL 4592103, at *2 (S.D. Ga. Dec. 28, 2007) (determining that Eleventh Circuit has only used 12(b)(3) for improper venue due to a forum selection clause where it "specifies either a state or foreign court, making transfer to another federal court pursuant to § 1404(a) impossible"), with Lipcon, 148 F.3d at 1290 (finding "Rule 12(b)(3) a more appropriate vehicle through which to assert the motion to dismiss" where forum selection clause provided parties should litigate in England); Krenkel, 579 F.3d at 1282 (dismissing case under Rule 12(b)(3) where forum selection clause required parties to litigate disputes in The Bahamas). Here, the Court has the option to transfer this case to another federal district court. As such, this case will be transferred pursuant to 28 U.S.C. § 1404(a).

    C.    <u>Transfer of this Case to the Eastern District of Virginia is Appropriate</u>

In deciding where to transfer the case, amongst other factors, this Court will consider "the convenience of the parties and witnesses," "locus of operative facts," location of parties, and the "interest of justice" given the entire circumstances. 28 U.S.C. § 1404(a); see Manuel v.

Convergy's Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) (noting the § 1404(a) factors) (citation omitted). The forum selection clause holds great strength in determining where a case should be transferred. See In re Ricoh Corp., 870 F.2d at 573 (holding that "venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors"). Thus, "whether transfer is justified under Section 1404(a), a choice of forum clause is a 'significant factor.'" Id. (citation omitted).

First, there are two valid and enforceable forum selection clauses that apply to two corporate Defendants. Zuccarini agreed to forum selection clauses with Network Solutions in the Eastern District of Virginia and eNom in the Western District of Washington. Verisign and Namejet did not provide evidence that they agreed to a forum selection clause with Zuccarini. In addition, neither Verisign nor Name Jet objected to a venue transfer in their responses, and there is no support from any of the Parties that litigating in either Virginia or Washington would be more of an inconvenience than Florida. Moreover, none of the Parties, except Plaintiff, are located in Florida. Also, nothing alleged in this case occurred in Florida.

In the interest of fairness and judicial economy, this case will be transferred to the Eastern District of Virginia. See P & S Bus. Machines, Inc. v. Cannon USA, Inc., 331 F.3d 804, 807-08 (11th Cir. 2003) (reversing a district court's holding which did not transfer a case based upon the contractual obligations in a forum selection clause). The Court recognizes the forum selection clause between eNom and Zuccarini, but this lawsuit should not be separated into piecemeal litigation because of the two forum selection clauses. Rather, it should be transferred to Virginia because of the "locus of operative facts" and "in the interest of justice" based upon the entire circumstances of the case.

The causes of action in this lawsuit stem from the transfer and selling of domain names that allegedly involve all Defendants. However, the impetus for the breach of contract and other claims arise from Network Solutions transferring 90 to 93 domain names to Blacksburg. Although Zuccarini purports that eNom transferred some domain names, it is clear from the Complaint that the center of the accusations pertain to Network Solutions. There are 93 domain names at issue, and Zuccarini accuses Network Solutions of transferring 90 to 93 of them. Compl. ¶¶ 13, 17. Moreover, Zuccarini states that "fourteen (14) of the ninety (90) domain names transferred by NSI [Network Solutions] were auctioned by NameJet." Compl. ¶ 18. Hence, the "locus of operative facts" directly pertains to Network Solutions transferring the domain names, which were eventually auctioned and sold by NameJet.

Network Solutions has a valid and enforceable forum selection clause, their headquarters is located in Herndon, Virginia, and the contractual disputes pertain to the agreements formed in Virginia. Moreover, Network Solutions' witnesses and documents will likely be located in the Virginia area. As such, this case should be litigated in the forum where the parties formed a contractual obligation to resolve such disputes and where the substantial amount of allegations occurred. See General Pump & Well, Inc., 2007 WL 4592103, at *5 (finding "that it is in the interest of the parties, the witnesses, and judicial economy for this dispute to be resolved in a single lawsuit" and transferring case with additional corporate defendants because of a forum selection clause despite not being parties to the clause).

Accordingly, this case is transferred to the Eastern District of Virginia. Therefore, the Court will not rule on the merits of the Defendants' Motions to Dismiss for failure to State a Claim or other pending motions at this time.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that eNom's Motion to Dismiss for Improper Venue or to Transfer Venue (ECF No. 14) is DENIED; Network Solution LLC's Motion to Dismiss for Improper Venue or to Transfer Venue (ECF No. 22) is GRANTED IN PART AND DENIED IN PART.  The Motion is DENIED with respect to Dismissal for Improper Venue and GRANTED with respect to Transfer Venue.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of November, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record